May it please the Court, my name is Stephen Jacobson. I'm arguing for Mr. and Mrs. Morgan this morning. I'd like to save, actually, as much time of my time as I have, and I'll be watching and monitoring. This case is the second time this case has been before a panel of this Court. The first case, there was a district judge had dismissed for an absence of coverage. This Court found coverage, a different panel of this Court found coverage, and remanded for trial. On trial, the two claims, there were essentially two claims left. The first claim was for breach of insurance contract for failure to provide promised benefits. That is a defense of an action, of another action that had been pending in the State courts in Hawaii. The second claim was bad faith. In a preliminary pretrial judgment, the district, the magistrate judge, who was sitting as the district judge, entered summary judgment against Mr. and Mrs. Morgan, based upon a finding that, although there were genuine issues of material fact, summary judgment was nonetheless granted on the bad faith claim on a theory that it was somehow surplusage, which seems to be a concept, doesn't not seem, it's not a concept under Hawaii law. That's probably an error, but does it have, and this is what the judge thought, and I'm not sure if it's true or false, in Hawaii, does it make a difference in terms of damages if you aren't going to get punitives? Does the dollar calculation come out the same? Is it, I mean, maybe we can't decide it this way, because it's not a criminal appeal or something, but is it a no harm, no foul? Not in light of the $1 judgment and whatever standard of speculativeness he was using, because that same standard would not apply in a bad faith case. In a bad case, in a bad faith case, for example. Well, wait a minute. What the judge really said was, you guys aren't entitled to anything, period. And he said that for, on the contract claim, that's what he thought. You came back to him, if I understand correctly, and said, wait a minute, judge. If you found a breach of contract, you've got to give them at least a dollar. And he says, okay, I'll give nominal damages of a dollar. So it really isn't true. I mean, what you said is true, probably. But if we were to look at what the court did, we know the court said, you're entitled to zero damages, period. Now, maybe that's wrong, but that's what he said. Would there be any difference between that on the contract claim and the bad faith claim? Or suppose he said, I find you have $10,000 of damages total. See what I'm trying to ask you? As a practical matter, does it make any difference? Because if we, let's say, theoretically held against you on all points except that, the judge should have not dismissed the bad faith claim. Would we send it back for that? Do you think we should send it back for the bad faith claim? It would depend upon the grounds on which you ruled. If you were ruled on the basis that there was somehow a distinction between how damages the standard for damages under Hawaii law, for contract law and tort law, and that the That was my question. And that there was a higher standard for contract law than tort law. It should be remanded so the tort standard could be applied in a bad faith claim. In this particular case, you have a Hawaii decision on this Court, for this Court already, that came out while this action was pending, called Living Designs, which we've decided in our brief. In Living Designs, the Court looked at, it was looking at a tort case there. It was for fraudulently inducing a settlement. But it articulated both Hawaii contract law and Hawaii tort law. The standard of, the standard that needs to be met in proving damages, which means the value of any claims, excuse me, that the, that no higher degree of certainty as to amount is made in a, that uncertainty, speculative is whatever term you want, uncertainty as a fact of damages is distinguished from uncertainty as to the amount of damages in determining whether a damage award can be made, and that where you have, where the fact of damage is established, as it clearly is here, that no higher degree of certainty is required as to, as to amount as the nature of the case admits. When we pointed this out to the district judge on reconsideration, because Living Designs came out at that point, part of the judge's reaction, as I recall, was that Living Designs was a tort case, so it doesn't apply in this contract case, which is flat-out wrong on the face of Living Designs, because it said he was talking about contract law, and one of the cases that, excuse me, because the Ninth Circuit panel was talking about contract law, and, in fact, the Chung case, which Living Designs is based upon, was the contract case where they were, so. Roberts. Let me ask you a question, Gon, just to try to maybe shake down a problem I'm having. It strikes me that what the district court said, say, on the contract claim, let's just look at that, ultimately was, look, let's talk about the $30,000 you gave up, and let's just focus on the $30,000. I think the court said, among other things, well, you have not made any effort to indicate that that was a reasonable and good faith settlement of the claim in question. That is her, as I understand it, you've got your claims for foreclosure, et cetera, et cetera. She comes in and says, no, I have got prior title, whatever. I've got prior rights, and, therefore, they cut you off. Your rights can't interfere with mine. You ultimately, if I understand it, you settled that claim. Correct. In part on appeal by giving up the $30,000. Among other considerations, yes. Among other things. Okay. The court seemed to say, look, you guys made no real effort to show me that that was a reasonable, good faith settlement. Now, I'll buy if you show me it was reasonable. I don't know if he said that, but let's see. We buy that it were a reasonable and good faith settlement. Then the insurance company is in big trouble, even though there could have been a better settlement. It's too bad. How do we deal with that? Did you make any effort to show that this was a reasonable and good faith settlement of that piece of litigation on appeal in Hawaii? We made an effort to show that it was a settlement, but that's not what the district court found at all. There were no findings, in fact, or conclusions of law. I know. The district judge said that the $30,000 isn't money. It's not money, and it's speculative, were the two things he said. But let's go to the, let's go to the, if we said, oh, no, Judge, you can't say that, I'm asking you, what was in front of the court to show that this was a reasonable and good faith settlement that should be allocated to that claim, the claim that she was making to Kenya? The entire district, the entire record of the Kauai court. Okay. Everything that got on. In that case, there were three appeals in the Hawaii Supreme Court in that case. There was a long, exhaustive record. It took ---- And did you say to the district judge, okay, look, here's the record of the Kauai court, boom. You can see what it is. You can make the allocation, et cetera. Is that what you did, or did you rifle it? We put the record in. We were denied an opportunity to make an opening statement. The, I believe under the applicable Hawaii law, as articulated in Sentinel, that's the, it's prima facie, it's assumed, and the burden would be transferred to the other party. And there was no allegation made. I'm looking at Sentinel, and I'm reading Sentinel to you, and Sentinel says, you're entitled to negotiate a reasonable and good faith settlement, and if you do, it becomes a presumptive amount. That's what it says. And so my, that's my question to you. That's your burden. Where is the reasonable and good faith settlement? Was it the district judge told, or did you just give him all the papers and say, here, you figure it out? We gave him, we gave him all the papers. We proposed findings of fact and conclusions of law. Okay. And that was not a, that was not a question that was really pursued at all in the circuit court by the defense. Was there, on the flip side of what Judge Fernandez is asking, was there an argument made below that the amount of the settlement was unreasonably inflated or unreasonable in any other way? The argument made below was that it was speculative as to its value. I don't even know what that means. Certainly for the giving up your appeal on the deficiency judgment, which had nothing to do with the defensive title and where you had lost in the state court, did you present any information that would say what the value of giving up your right to appeal the state court's determination that you weren't entitled to a deficiency judgment? We presented the entire record of the, and before the state court, which showed that, and this isn't, it isn't even disputed on the merits, that there was only, that the initial deficiency judgment we had was set aside solely on the basis that we were not third-party beneficiaries under that contract. Okay. So the sole issue on the appeal would have been whether or not we were third-party beneficiaries or not. The, and that issue, as it was a matter of Hawaii law, it's very clear. It's not even disputed in Chicago title briefs here. There was also, as part of that record, as part of proving up the deficiency judgment, exactly to the penny how much that deficiency judgment should have been. But you had lost in the trial court. So the value of your right to pursue an appeal is not going to be equal to the value of the deficiency judgment you didn't get. So the question I thought the district court was struggling was, well, what value is there to a foregone appeal right? The value is the judgment we would have achieved in the judgment. Hawaii uses the terminology judgment on appeal. The value of that judgment after the appeal was over, in which my client should have won. So we're going, the basis of which we're using is the amount we were owed, the total amount we were owed is what we should have achieved. There are two different ways you can do a lost appeal claim. One, you can show settlement value. We were not opting to do that. We were opting to show what the value of the claim is if it was gone forward to judgment. Because, actually, we thought the one thing that would have been speculative is what the other side might have settled before. Because we had the other side fighting tooth and nail, making three appeals to the Hawaii Supreme Court, moving for reconsideration on every conceivable topic, and not being as best we could determine willing to settle for a penny less. So the alternative would have been not to settle and continue with the appeal. So that's the measure we're using. It's the same measure you'd use in a malpractice case, where a lawyer committed malpractice, the claim was lost for that reason. So what you do is you go in, you prove what the value of the malpractice claim by showing who would have won the claim, who should have won the claim, which is easier in this particular case than it would be if you had to retry the case all over again, because you already have the full trial record. So all you have to say in this particular case is what should the appellate court have done. And there was really just the one issue, third-party beneficiary. And that's a very clear question, because what DiMichele had promised to do when she took title of the property was pay the money she owed under the mortgage to the Morgans. To pay off part of what she promised to do when she took the property from Mr. Kerr, the original owner, was to pay what was owed to the Morgans. That was her promise. It was a promise to make it directly to the Morgans, which is, that's the standard definition of a third-party beneficiary. There's the New England Fish case that was before this Court, where that was the basis of a third-party. That's clearly a third-party beneficiary claim. You promised to pay a debt owed by somebody directly to the person who it's owed  And that was really the only issue on that appeal. Putting aside Of course, if she won her basic claim that she was appealing, that she actually had prior title to you, that would have been really problematic, wouldn't it? That is to say, the claim that she then had to pay off the lender over which she had total priority would have been kind of problematic, wouldn't it? I would guess that's why you settled this thing. Actually, the case went to another attorney for a while who settled it. Thank you. So it wasn't me who settled it. See, no, it wasn't, because the record unequivocally established her record, what DiMichele was saying was that Mr. Morgans somehow knew. She took title after the Morgans took title. Her only argument was that there was some kind of DROA, some sort of sale agreement ahead of time. Sure. And Mr. Morgans somehow knew about it because it was talked about as a cocktail party. And that record showed that the supposed cocktail party didn't even take place on the day she said it did. Well, I don't know about Hawaii, but in California, at least, if somebody is in open and notorious possession of a piece of property, buyers are often said to be on some kind of inquiry notice to, if they don't know, to go up to the person in possession and say, how come you're in possession here? And if they don't do that, they may well find themselves behind the eight ball. In this particular case, there was a rental contract to Ms. DiMichele. So what she had shown to get when the title insurance was being paid, she had shown the rental type. Somebody actually came around to the property and did make an inquiry. That's all in the lower court record. Excuse me, that's in the Hawaii court record. Somebody actually did come around and make an inquiry. And what that person was, somebody made an inquiry. They looked at the escrow and some other things. And what they had found was there was also a rental agreement between Kerr and DiMichele, in which Kerr had rented her the property. So the reason that it wasn't the Morgan loan, but it was the previous loan from the first lender in that loan file, that lender was under the impression that she was a tenant being there because she had a written lease. Putting aside the settlement issue for a moment, why wasn't the district court right that when you went to prove your damages on remand from the Ninth Circuit, you didn't show the reasonableness and necessity of the work performed and the connection between the work done and the covered claims? The court said you basically did nothing to prove up your damages. Why was that wrong? There were two elements to our damages. Damage element one, which was by far the largest, was the value of the settlement. So that's not a damage, right? That would be a compensatory amount under your indemnity claim. Yes, which would include actually some element of the attorney's lease. In this particular case, what happened on the summary judgment order was that the magistrate judge said that he was going to follow the AeroSafe case from Northern District of California and California law in general, which law says once you've established, once you've shown what your attorney's fees are, which we did by duly admitted exhibits, 103 pages of them for this particular case, the 103 pages of invoices. We had testimonies from the other two attorneys in terms of written, in terms of, you know, they're saying these are our fees. Under those cases, which include the AeroJet general case, as well as AeroSafe, once we put in the, once we showed what the amount of our fees was, the burden shifted to the other side. That's California law, right? Hawaii law doesn't require that. What the magistrate judge had said at the summary judgment level was that Hawaii law follows California law, which is, in a lot of ways, which is true, and therefore, in the summary judgment, he was going to follow AeroSafe. And, in fact, in the conclusion of the order on that was defendant cannot meet, defendant, if defendant can meet its heavy burden, defendant, not us. The heavy burden is the allocability. They were talking about us being on the defendant. But isn't allocability different than what the district court said you didn't do, which was proof of reasonableness and necessity of the work performed? Reasonableness and necessity are in another California case. Remember, the judge indicated he's following California law, named AeroJet general. And what the judge did when he made the ruling you're referring to at the trial level, he thought he was applying AeroJet general. He was just misreading it. Counsel, you have about a minute left, if you'd like to reserve a little more time. Alito, yes, I'd like to reserve. Thank you. Mr. Holbert. May it please the Court. Neil Holbert and Laura Couch with me for Defendant Appellee, Chicago Title Insurance Company. Appellants would have this Court believe two things that are patently false. First, they would have this Court believe that somehow they did not have a full and fair opportunity to present their case at trial regarding their damages. Second, they would have this Court believe that they're entitled to have Chicago Title indemnify them for claims that they had against DiMasselli for a money judgment, a claim that even the appellants agree has nothing to do with title. I want to clarify one thing. Why does that matter? Pardon me? Why does it matter? It has nothing to do with title. What they had was a claim against DiMasselli arising out of a Disneyland lottery. Okay? And they gave that up in order to get rid of the title attack that DiMasselli was making. Who cares whether the $30,000 had anything to do with title or not? Why does it matter? Because the title policy indemnifies and only requires a duty to defend title claims. We are not dealing with a CGL policy. Go ahead and dispute that, of course. There's a title claim against them, right? Let's say. There's a title claim against them by DiMasselli, correct? And let's say we're up on appeal and they say, look, DiMasselli, if you'll dismiss your appeal, I'll give you my new Cadillac. And DiMasselli says, okay, we'll settle this case. You give me the Cadillac and I'll dismiss my appeal and you guys keep title. What's wrong with saying to Chicago title, I had to give up my Cadillac to settle this case? Cadillacs have nothing to do with title. I see those as entirely different scenarios. In one instance, what you're talking about is you've translated dollar bills to a Cadillac. Yeah. Instead of paying DiMasselli for her title claim dollar bills, you've paid DiMasselli a Cadillac for her title claim. Yes. That's not what we're dealing with here. What we're dealing with here is whether or not the failure to defend, and that's all this Court decided previously. Counsel says you decided there was coverage. That was not decided. All you decided was that Chicago title breached its duty to defend. That does not expand the coverage in and of itself. It does not mean that simply because they didn't defend, they are liable for all things that might have occurred in the underlying case. You have to still go to the issue of what was covered and what isn't. Of course. And you covered the title problem. We covered the title policy. And DiMasselli's up on appeal saying I've got title. Right? Am I right? I think that's probably what — it's difficult to figure out what they all said in the underlying case and why. But I assume that someplace in there she's on appeal claiming — although, I'm not really prepared to concede that, because really what they were fighting about was whether or not she was obligated to pay money to them because of an agreement under the agreement of sale and the satisfaction. I thought she appealed. I thought she was appealing. Some of those appeals got dismissed as being untimely. Ultimately, I'm really not quite sure what was there. But I'll — Well, let's say she was appealing. Let's assume she did. Let's say she was appealing on title. Let's say she did. Right? Okay? So there we are. And they've got this $30,000 claim, which arises out of a totally separate contract. Let's say that. And they say we'll give up our $30,000 claim if you give up your title appeal. Okay? Okay. Let's say the $30,000 claim is like cash in the bank because Demis Sali is a multimillionaire, just for the sake of the argument. Okay? Okay? Why isn't that $30,000? Okay. Now, if that was what it was, take my example. With a large if. Come into my world. Yeah, come into my world and say, okay, in your world, that's what happened. Because, and I may sound like I'm repeating myself. Because Chicago title only has an obligation to indemnify for title claims. If they had managed to put on sufficient proof to shift the burden to Chicago title, we would have gotten to there. They failed to do anything. All they did was throw in invoices and the pleadings with no testimony about a connection between one and the other. There, in fact, is nothing in the record that would connect one to the other. If, because now we're talking about ifs, if that had happened, we still would have been able to convince the Court that Chicago title was not responsible for what they gave up, because what they gave up, admittedly, there's no dispute that what they gave up was a claim that arose out of something that was not covered by the policy. It's absolutely not. That seems so irrelevant. That's what I'm understanding in your argument. That's what I don't understand in your argument. What they gave up was something not covered by the policy. My Cadillac, not covered by the policy. And what they got in return was a dismissal of an appeal that said, I've got prior title. What's wrong with that? Because we have to go back to what would have taken, what could have taken place at trial. Our position is they ---- Which trial are you talking about now? The trial in the district court. Okay. Let me, if I may, this may take a little longer to answer this. To clarify, there are three categories of their claims of damage. One is their attorney's fees. One is this $30,000 judgment, which was a court order that said, Demaselli, during the pendency of this foreclosure case, you have to pay into court an amount equal to the money that you would have paid under the agreement of sale. That's what that $30,000 is. It's called undeposited rent in various places. But really, when you look at the record, the judge is saying, I'm going to make you deposit the money you're supposed to be paying monthly under the agreement of sale, and I'm going to make you pay it into court. Right. I think she paid some. She didn't pay others. That's that $30,000. Their other claim is this claim for the money judgment that is based upon a ---- an agreement of sale and the satisfaction deed to essentially pay Morgan's ---- excuse me, Kerr's debt to the Morgans. And the judge in the foreclosure case said, no, you don't get that. All of those things start to go up on appeal in some fashion, in some way, at some time, the ones that didn't get dismissed. If they had managed to get over their burden of proof at trial in the district court, we would have then been dealing with, are they entitled to these attorney's fees? Are they entitled to recover from Chicago title the $30,000 for the payments under the agreement of sale? Are they entitled to recover this never-awarded judgment for money that she agreed to pay under the agreement of sale? And the point is that the second two are wholly dependent upon the agreement of sale.  It's really no different than if there were multiple insurance policies involved in the same claim. You can't recover under one policy under a failure to defend if it's not covered under the ---- or if it's covered under the other one. You have to ---- you can only recover what you're ---- what you've indemnified for, and these were not part of the coverage. I hear all that, and I'm just being obtuse, I understand. But one of the claims was the title claim, right? Yes. Let's for the moment, I said, let's for the moment set aside whether they improperly allocated the dollars. One of the claims was the title claim. The district judge said, because of the settled title claim, you gave up this $30,000 thing, which didn't arise out of the title claim, you can't possibly recover $30,000 from Chicago title because it didn't arise out of the title claim. That's what I'm not understanding. It may not ever ---- does it matter where the money they paid to settle the title claim arose? Yes. Who cares where it rose? Why does it matter? Because you can't expand the coverage of the policy ---- I'm not expanding anything. ---- because of the failure of the defense. I'm not talking about expansion. I'm saying you've got the title claim. That's the coverages on the title claim. Okay? The question is what ---- If I have to pay $30,000 to settle the title claim, why isn't that covered? If I had to pay $30,000 cash to settle the title claim on appeal, why is that not covered? I may have misunderstood what you asked just previously. If you're talking about the pure circumstance where someone pays money to settle a covered claim ---- Precisely. ---- which is your Cadillac example, and I concede the Cadillac example. If you pay the Cadillac to settle ---- So what's different about any other form of value? The question is do you give any form of consideration or value? It can be a Cadillac. It can be another claim. It can be your lottery ticket that just came in last week that's worth $30,000. What difference does it make? I guess I'm having the same difficulty as Judge Fernandez because I don't understand why it matters what the nature of the consideration is, what the source of the dollar amount or value is. Why does that make any difference if the question is what did you give up to I suppose it is because you have these three discrete things. What three discrete things? The attorneys' fees, the ---- which they didn't recover from DiMasselli either, the $30,000 for the unpaid rent and the unawarded judgment. They didn't ---- they did not even provide any evidence to the district court that starts the premise of the whole thing, that they gave up the $30,000 judgment to settle the title claim. That's the allocation problem, right? Did they give the judge anything to allocate it by, correct? Well, they didn't. I'm not sure that it is precisely an allocation issue, but they certainly didn't give anything allocation. They will argue it was our obligation to allocate. Their obligation was to come before the court and to provide sufficient evidence that the fees that they incurred were incurred. Well, you're at the starting point. I mean, the starting point is actually that your client failed to defend. Yes. That's actually the starting point, not what happened later. So we start with that. Well, yes. In the ---- on the damages issue, in that hearing, the court said simply wasn't enough evidence provided by the appellants, by the Morgans. Was there any difference, and forgetting for a moment whether the form of the consideration for settlement, under Hawaii law, is there any difference about what needs to be proven for a settlement? Would the Morgans have had to come in and say prove up that it was in good faith and reasonable? Is it any different than what they would have had to prove with respect to the damages, the attorney's fees? And what are those elements under Hawaii law? Was the district court correct? Yes. What ---- if what you're talking about, the damages are the attorney's fees versus what they gave up ---- Well, those are the defense costs. The defense ---- As opposed to the settlement. Yes. But the damages are the dollar bills associated with the defense costs. Yes. And the judgment is the other thing that they gave up. In both instances, they have to provide some evidence. It's not the same, obviously, because it's a different animal. But they have to at least come forward and provide some evidence that it was a reasonable and a good faith settlement. But that's as to the settlement issues, the settlement of the giving up the judgment. On the attorney's fees, they have to at least come forward and show that they incurred hours, that they had ---- that they did some work. They have to show what the rate is for an attorney doing a residential foreclosure. And they have to show that the work described in the invoices is related to the work done in the foreclosure case that relates to a covered claim. They have to do all that. They didn't do anything. Well, why doesn't Aerojet, which says ---- which shifts the burden, says the duty to defend is the duty to defend absolutely, and so all the burden of showing that it was reasonable all falls on the insurance company? Aerojet is a purely allocation case. And that's different from proving that you did the work. Well, some defense was required. I mean, starting from the premise that you failed to defend, some defense was required. Some lawyer had to do something. Yes. Okay? Yes. And these lawyers did something and presented invoices showing we did work for these clients, and one of the claims was a title claim, and here is our total fee. Why doesn't that shift back then? Why doesn't that then become an allocation question where you would say, yes, you defended the title claim, but there was also some other legal work in there, so this and this and this is, you know, too many hours over here and too few hours over there, and that sort of thing. And just to clarify, I mean, Aerojet does say it's the insured ---- in the general case, it's the insured that must carry the burden of proof on existence, amount, and reasonableness, but in this case, this was a site investigation expense, so ancillary to the litigation, they are presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are, in fact, unreasonable or unnecessary. So Aerojet clearly goes beyond allocation. Yes, but it also says in that case, in the exceptional case where the insurer has breached its duty to defend, it is the insured, the insured that must carry the burden of proof on the existence and the amount of damages. Is Aerojet a Hawaii law? I'm sorry? Is Aerojet the law of Hawaii? No. It's a California case. Well, I know it's a California case. Oh, is it the law in Hawaii? My question is, is it also the law of Hawaii? The only law in Hawaii on attorney's fees as damages, the best case, excuse me, the Uemura v. Wicks case, which talks about attorney's fees as damages. And the Sharp case talks about what is necessary to prove attorney's fees in a contract case. And the Hawaii case has put the burden on the claim to the party claiming them as far as I can see. And unless Aerojet is the law of Hawaii, it's irrelevant. Is that right? Yes. Okay.  The other one, let me skip to one of the other cases. Let me ask you one other question along that line. If Aerojet really is irrelevant, can they claim that the magistrate judge said he was going to follow this irrelevant case and then didn't? Is that a ground to send it back to him and say, look, do this thing right? It's the right result. The judge reached the right result. Okay. The question of punitive damages was another issue that was raised. And what the plaintiff, the appellant in this case, has to prove, and this was on a motion for summary judgment, there's no doubt that they have to come forward with the, as the Hawaii cases say, the something more. They don't define what the something more is, but the something more than what is necessary to simply prove the bad faith. In this instance, you will note that the appellants came forward with no proof. The only thing before the Court on the motion for summary judgment on the bad faith and punitive damages was what occurred back in 1994 when a letter was sent to Chicago Title's agent and he simply put it in the file. That was it. They did not come forward with any other evidence, nor did they ask for a Rule 56E affidavit saying that they had not sufficient time yet to develop that evidence. They never asked for that. It was argued, the whole case was, or the whole motion was argued based on what was in the record and before the Court. On the punitive damages, you're saying? I'm sorry? On punitive damages. Yes. So the court said, nope, you don't get punitive damages. You don't get punitive damages because there's no evidence, by clear and convincing standard, that there was something more. Why does that lead to a conclusion we dismiss your bad faith claim? Because counsel was asked, and I think you raised the question earlier, was asked at the hearing, are your dollar damages the same for your breach of contract claim, that is the failure, the breach of the duty to defend, and your bad faith claim? And counsel responded, yes, they are the same damages. So why is that a basis for dismissing the bad faith claim? Because the court is not obligated to go forward on duplicative claims. They've got we knew there was a breach of contract. It's the same dollar amount. It doesn't make any difference whether it was this breach or that breach or this breach. It doesn't make any difference whether they breached the covenant of good faith and fair dealing or they breached the duty to defend. It's the same dollar bills. The court was told it's the same money. So if I sue you after an auto accident, I sue you for negligence, intentional wrongdoing, gross negligence, and distress, and emotional distress, and all the same, the court can dismiss three of those and make me go to trial on one? Because the Ninth Circuit, the Ninth Circuit said one of those is already established. One of those breaches is already established. Yes. So you've got a breach. The damages for this breach and this breach are the same. I'm not going to waste my time listening to the facts about something else. It's the same dollar bills. I understand. I understand. You have exceeded your time. We thank you for your argument. And I believe you have some rebuttal time remaining. Thank you. Thank you. Dimichelli's notice of appeal is at pages 606 to 608 of the record. The settlement agreement in the Kauai court, which was also part of the record and shows exactly what was settled, was at pages 744 to 747 of the record. Dimichelli did appeal. What was settled was her sole claim, her sole claim. Dimichelli's sole claim was that she could block foreclosure because of this alleged prior DROA that the Morgans supposedly knew about. We don't have a whole bunch of claims. That was her sole defense. It was phrased ten different ways, but it was the same defense. There is no issue as to allocation of fees because everything in that court was either in the nature of mitigation, that is, trying to collect the monies that Dimichelli owes so as to minimize, which had the effect of minimizing what the Chicago title's liability. But the foreclosure sale was some $270,000. The loan outstanding was $300,000. That was one of the things I didn't understand. It sounded like there were only $30,000 that were left on that note. $30,000 of principal. But by that time, it had been outstanding for five or six years, so the number was approaching $600,000. With respect to the question on bad faith, there is no Hawaii law on the point of who has which burdens in proving attorney's fees with respect to proving reasonableness or allocation. Hawaii cases, no Hawaii cases touched on that. In pretrial proceedings, the holding was that allocation would be according to California law. When it was actually decided at trial, it was on the supposed basis of California law. If we had known that California law wasn't going to be followed, then we could have put that evidence on, but we were not on notice to do it. Once we heard the ruling, we asked to reopen so we could put on evidence as to what happened. And I think it's in the record anyway. But we asked for opportunity to put further testimony on with respect to allocation and reasonableness, and that motion was denied. So what happened here was a due process denial. We're being told the case is going to be tried on bad faith claim. We're told the case is going to be tried one way is through attorney's fees. California law is going to be followed. Aerosafe in particular is going to be followed. And then all of a sudden, we get to trial. We rest. And then all of a sudden, the law changes. In that particular instance, and we asked to be right on the spot, I asked to reopen. And the Court said no. Counsel, you've exceeded your time as well. We appreciate the arguments of both counsel. The case just argued is submitted, and for the morning session, we stand adjourned.
judges: Fernandez, Graber, Ikuta